IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| JOSE LUIS CEDANO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| V. | ) | CIVIL ACTION NO. |
| | ) | 1:15-CV-105-BL |
| TYLER BAXTER, Warden, | ) | |
| Big Spring Correctional Center, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | Assigned to U.S. Magistrate Judge |

## OPINION AND ORDER [1]

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by Petitioner, Jose Luis Cedano, a federal prisoner who was confined at the Big Spring Correctional Center in Big Spring, Texas, at the time petition was filed.[2] In addition to the § 2241 petition and attachments, the Court has a response from the Respondent with an Appendix containing the documents related to the disciplinary cases challenged in this proceeding. (Docs. 1, 1-1, 8, 9.) After considering the pleadings and relief sought by Petitioner, and the applicable law, the Court has concluded that the § 2241 petition must be denied.

## I. BACKGROUND

Petitioner is serving a term of 151 months' imprisonment imposed in the United States District Court for the Central District of California, after he pled guilty to possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(b)(1).(Government Appendix, (doc.

---

[1] As the parties have filed a consent to proceed before the United States Magistrate Judge, this magistrate judge can resolve this case under 28 U.S.C. § 636(c).

[2] In habeas corpus cases, the warden, as immediate custodian, is the only proper respondent. *Rumsfeld v. Padilla*, 542 U.S. 426, 434-36 (2004). Thus, while Cedano correctly names Tyler Baxter as Respondent, he also incorrectly names the Bureau of Prisons as a Respondent. The Bureau of Prisons should therefore be dismissed as Respondent.

9) at 3-7.) Cedano's current projected good conduct time release date is August 31, 2018. *See* www.bop.gov Jose Luis Cedano, Reg. No. 44212-112, last visited March 31, 2017.

Although Cedano challenges only one disciplinary action in this § 2241 petition, he received two somewhat related incident reports while housed at FCI-Englewood on April 26, 2013, incident report numbers 2437361 and 2437363. (Doc. 1, at 10-11; 13-14.) Both incident reports involved the discovery of prohibited items in Cedano's possession on April 25, 2013, but only one resulted in the disallowance of good conduct time. The first, incident report number 2437361, is the incident report he challenges in this § 2241 petition. As Cedano correctly points out, he was initially charged with violating BOP disciplinary codes 305 and 328— possession of anything unauthorized and giving or receiving anything of value to or from another inmate or person without staff authorization, respectively. (Attachments to § 2241 Petition, (doc.1-1), at 1-3; doc. 9, at 10, §§ 9 - 10.) The reporting employee stated that he found a Casio G-Shock watch and pen capable of sending and receiving encrypted messages in Cedano's locked locker. (Doc. 9, at 10, § 11.)

The second incident report, number 2437363, also charged Cedano with possession of anything unauthorized in violation of BOP disciplinary code 305. (Doc. 9, at 13, §§ 9 - 10.) Here, the reporting employee stated that he found a black and silver dual time chronograph watch with a black leather band in Cedano's right pants pocket during a pat search. (Doc. 9, at 13, § 11.) After the prohibited items were discovered, Cedano was placed in administrative detention status in the Special Housing Unit (SHU). (Doc. 1-1 at 23; *see generally infra* note 6.)

Both incident reports were investigated on April 26, 2013. In both cases, the investigator advised Cedano of his qualified right to remain silent. (Doc. 9, at 11, § 23; 14, § 23.) Cedano made statements regarding both incident reports. With regard to incident report number 2437361, he

2

stated: "I traded leather craft items for the watch and pen. I am known as Hustle Man on the yard." (Doc. 9, at 11, § 24.) With regard to incident report number 2437363, he stated: "I made that watch band, and traded craft items for the watch." (Doc. 9, at 14, § 24.)

On April 29, 2013, Cedano appeared before a Unit Disciplinary Committee (UDC) on both incident reports and provided statements on both. (Doc. 9, at 11, § 21; 14, § 21.) With regard to the second incident report 2437363, the UDC recorded Cedano's statement as: "Inmate admits that it was his." (*Id.* at 13, § 17.) Based on this statement and the reporting employee's description of the incident, the UDC found Cedano violated BOP disciplinary code 305 as charged and suspended his commissary and telephone privileges for 60 days. (*Id.* at 13, §§ 18-20.) As Petitioner did not lose good conduct time, he does not further challenge this charge and it is not further addressed in this proceeding.

With regard to first incident report 2437361, the UDC recorded Cedano's statement as: "I didn't know I wasn't suppose [sic] to trade goods with other people, but the material that they say they found was not mine." (Doc. 9, at 10, § 17.) The UDC referred this particular incident report to the Disciplinary Hearing Officer (DHO) to consider sanctions not available to the UDC. (*Id.* at §§ 18-19.) Cedano was advised of his rights before the DHO. (*Id.* at 14.)

The violations originally charged in incident report number 2437361 were subsequently amended to a violation of code 108, possession, manufacture, introduction, or loss of a hazardous tool.[3] (Doc. 9, at 10, §§ 9-10 [hand-writing replacing prior typed section].) The description of the

---

[3]The Respondent provided to the Court a copy of the Bureau of Prisons (BOP) Program Statement (PS) 5270.09 setting forth the Inmate Disciplinary Program. (Doc. 9, at 25-79.) Table 1 of that document lists the Prohibited Acts and Available Sanctions. *Id.* at 68. BOP disciplinary code 108 prohibits "Possession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; *e.g.*, hack-saw blade, body armor, maps, handmade rope, or other

misconduct remained the same. (*Id.* at § 11.) Cedano was expressly provided notice of the amendment incident and code change on May 16, 2013. (*Id.* at § 20; Doc. 9, at 19, § V; 21.) Also on May 16, 2013, Cedano was provided the opportunity to request witnesses and a staff representative. (Doc. 9, at 21.) He requested a staff representative but no witnesses. (*Id.*) On June 11, 2013, he requested a different staff representative. (Doc. 9, at 23.)

Cedano and his staff representative appeared before the DHO on June 12, 2013. (Doc 9, at 18, §§ I - II.) The staff representative presented a statement, which the DHO summarized as:

> Originally Officer Michelsen was requested as Staff Representative. Officer Michelsen was not available so Ms. Hufnagle was Staff Representative which inmate Cedano agreed. Ms. Hufnagle stated his concern was that the code was amended after the incident report was written. She stated she explained it was amended because of the body of the report. He also has an issue that he got a 305 the same day that was handled at the UDC (IR #2437363 was reviewed and addressed items other than the G-Shock watch and pen which are addressed in this incident report).

(*Id.* at § II (B).) Cedano also provided a statement, which the DHO recorded as:

> I traded with another inmate for those items here. I never knew they could be used to send messages. It was just in my locker I wasn't hiding them or anything. I never used them for messages I didn't even know they were for that. Please dismiss the 108 shot[4] I don't know anything about being able to send messages.

(*Id.* at § III (B).)

Based on the evidence presented, the DHO concluded that Cedano committed the disciplinary offense with which he was charged in the amended incident report. (*Id.* at § IV.) As a disciplinary

---

escape paraphernalia, portable telephone, pager, *or other electronic device*)." 28 C.F.R. § 541.3, Table 1 (emphasis added).

[4]Petitioner uses the term "shot" frequently within his § 2241 petition. It is a colloquial term often used by BOP employees and inmates to refer to a disciplinary incident report.

4

sanction, based on his findings, the DHO disallowed 41 days of Cedano's good conduct time.[5] (*Id.* at 19, § VI.) The DHO also imposed one month of disciplinary segregation, which was suspended pending 180 days of clear conduct, and the DHO suspended Cedano's commissary and telephone privileges for 90 days. (*Id.*) The DHO explained his reasons for imposing the sanctions, noting that the watch and pen were considered hazardous tools in that they can be used in an escape attempt, to serve as a means of introducing contraband, and to circumvent inmate telephone monitoring and pass on "illicit information." (*Id.* at § VII.)

## II. CLAIMS

In this § 2241 petition, Cedano contends generally that the imposition of the disciplinary penalty of loss of good time was in violation of his right to due process of law. (Doc. 1, at 2.) More particularly, Petitioner raise several specific challenges to the underlying disciplinary proceedings. Petitioner Cedano asserts that (1) the amendment of the incident report to reflect a higher level charge violated BOP regulations regarding disciplinary process time limits; (2) he did not receive an Administrative Detention Order reflecting the amended charge; (3) the UDC improperly referred the disciplinary action to the DHO; (4) the UDC members and DHO were not appropriately certified under BOP policies; and (5) the evidence on which the DHO relied was insufficient in that no one demonstrated how the watch he possessed could be used to send or receive messages.

## III.   EXHAUSTION

The Respondent conceded that Petitioner Cedano has exhausted his administrative remedies with respect to the disciplinary action challenged in this case. (Doc. 8, at 6.)

---

[5] Cedano writes in the "grounds for relief" section of the § 2241 petition that he was disallowed six months of good time, but he offers no evidence of that claim, and it is inconsistent with the record documents. *See* Doc. 1, at 2; Doc. 9, at 19, § VI.

## IV.  ANALYSIS

In the context of a prison disciplinary proceeding resulting in the loss of good time credits, constitutional due process requires that a prisoner at a minimum receive (1) written notice of the charges against him at least twenty-four hours prior to the disciplinary hearing, (2) an opportunity to call witnesses and present documentary evidence in his defense, and (3) a written statement from the factfinder that includes the evidence relied on and the reasons for the disciplinary action taken. *Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

Upon review of a prison disciplinary action, a court must simply consider whether the decision of the prison authority was supported by "some facts" or "any evidence at all." *Smith v. Rabalais,* 659 F.2d 539, 545 (5th Cir. 1981). Due process does not require that the evidence in such a proceeding eliminate all other possible conclusions. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56. That is, if there are "some facts" or "any evidence at all" that support the action taken by prison officials, their decision must be upheld on federal habeas review. *Smith,* 659 F.2d at 545. The reporting staff member's incident report, standing alone, constitutes some evidence. *Hudson v. Johnson,* 242 F.3d 534, 536-537 (5th Cir. 2001). "Federal courts cannot retry every prison disciplinary dispute; rather the court may only act where arbitrary or capricious action is shown." *Reeves v. Pettcox,* 19 F.3d 1060, 1062 (5th Cir. 1994).

Here, there was evidence to support the DHO's decision. The DHO provided Cedano a description of the evidence relied upon in reaching this conclusion:

6

>The inmate stated he understood his rights, did not submit documentary evidence, and confirmed he did not request witnesses and did request staff representation. The Staff Representative was present for the hearing, statement documented above.
>
>The inmate's statement to the DHO is documented above.
>
>After being advised of his rights the inmate state to the Investigative Lieutenant: "I traded leather craft items for the watch and pen. I am known as the Hustle Man on the yard."
>
>After being advised of his rights the inmate stated to the UDC: "I didn't know I wasn't supposed to trade goods with other people, but the material that they say was found was not mine."
>
>As stated in the incident report: On the above date and time inmate Cedano, Jose #44212-112 was found in possession of a G Shock watch and a pen that is capable of sending and receiving encrypted messages. These items were found in the inmates locked locker. During the search the inmate was also found to have excess leather projects from the hobby craft area. During questioning the inmate about the items he stated he trades or sells the leather items on the compound.
>
>The code was amended to 108 based on the description of the items found during the search. Inmate Cedano was provided notice of the amended code on 05-16-2013.
>
>After careful consideration, the DHO found that the inmate committed the prohibited act(s) of Code 108, Possession of a hazardous Tool (Electronic Device), based on the greater weight of the evidence. During a search of your locker staff found a watch and pen capable of sending and receiving messages. You admitted to the DHO that you did have the watch and pen but denied knowing they were capable of sending messages. You stated you traded with another inmate for them at the institution. By being in possession of the watch and pen that can send and receive messages you are in violation of Code 108, Possession of Hazardous Tools, specifically electronic devices capable of sending and receiving messages. It was your responsibility to know what items are in your possession.

(Doc. 9, at 19, § V.)

As indicated in this report, the DHO relied upon the reporting employee's written description of the incident, which summarized the discovery of the watch and pen in Cedano's locked locker and explained that the watch and pen could be used to send encrypted electronic messages. The DHO also relied upon Cedano's admissions throughout the disciplinary process that he did, in fact, possess the

watch and pen, which he obtained from another inmate.

Notwithstanding this record, Cedano contends that the discipline process was deficient in several ways. First, he claims that the amendment of the incident report to reflect a higher-level charge violated BOP regulations regarding disciplinary process time limits. The Court assumes he refers to 28 C.F.R. § 541.5(a), which provides:

> The discipline process starts when staff witness or reasonably believe that you committed a prohibited act. A staff member will issue an incident report describing the incident and the prohibited act(s) you are charged with committing. You will *ordinarily* receive the incident report within 24 hours of staff becoming aware of your involvement in the incident.

28 C.F.R. § 541.5(a) (emphasis added). FCI Englewood plainly complied with this regulation by delivering incident report 2437361 at 8:05 a.m. on April 26, 2013, less than 24 hours after the incident occurred at 9:15 a.m. on April 25, 2013. (Doc. 9, at 10, §§ 15-16.) Subsequent amendment of the incident report does not render its original delivery deficient, and Cedano was provided ample notice of the amendment to the charge on May 16, 2013, well before he appeared before the DHO on June 12, 2013.

Second, Cedano claims that he did not receive an Administrative Detention Order reflecting the amended charge, in that the Administrative Detention Order he received referred solely to the charge contained in incident report number 2437363. But as noted above, Cedano received more than adequate notice of the misconduct with which he was charged by delivery of the original and amended incident reports. Furthermore, an Administrative Detention Order is not part of the BOP's inmate discipline process, and does not affect the validity of a disciplinary action.[6]

---

[6] Inmates placed in a Special Housing Unit (SHU) may be placed in either disciplinary segregation or administrative detention status, depending on the reason(s) for their placement in SHU. 28 C.F.R. § 541.22. Administrative detention status is non-punitive, and can occur for a variety of reasons related "to ensur[ing]

8

In his third and fourth specific challenges, Cedano alleges that the UDC improperly referred incident report number 2537361 to the DHO for disposition, and he questions whether the UDC members and DHO were appropriately certified under BOP policies. Under the policy which implements BOP disciplinary regulations, all greatest severity level charges must be referred to the DHO for disposition. (BOP PS 5270.09 Chapter 1, § 541.3(b)(1), (doc. 9) at 33.) Thus, once the incident report was amended to reflect a greatest severity level charge (the code 108 charge), referral to the DHO was mandated by BOP policy. *Id.* Further, as the Regional Director for the BOP's North Central Region informed Cedano in response to his Regional Administrative Appeal of the DHO's findings and sanctions through the BOP's administrative remedy process, both the UDC chairman and the DHO were certified to conduct UDC and DHO hearings. (Doc. 1-1, at 9.)

Even if the alleged failures to comply with BOP internal regulations or policies actually occurred, that would not undermine the validity of the disciplinary action. "Our case law is clear, however, that a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met." *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). Here, the disciplinary process applied in this instance met and exceeded the constitutional minimum requirements prescribed by *Wolff*.

In his final challenge, Cedano contends the evidence on which the DHO relied was insufficient in that no one demonstrated how the watch and pen he possessed could be used to send

---

the safety, security, and orderly operation of correctional facility, or protect[ing] the public. 28 C.F.R. § 541.22(a). As in the instant case, an inmate may be placed in administrative detention status while he is under investigation or awaiting a hearing for possibly violating a BOP regulation or criminal law. 28 C.F.R. § 541.23(c)(1). When they are placed in administrative detention status, inmates are ordinarily notified of the reason(s) for such placement through issuance of an Administrative Detention Order within 24 hours of administrative detention placement. 28 C.F.R. § 541.25(a).

or receive messages. The record reflects, during the disciplinary process, Cedano simply claimed that he was not aware that the watch and pen he admitted possessing could be used to send or receive messages. (Doc. 9, at 18, § III (B).) But the record shows no request by Cedano that this be demonstrated to either him or to the DHO. The DHO relied upon the reporting employee's explanation that the watch and pen in question had this capability. Such reliance is sufficient to comply with the required evidentiary standard of "some facts" or "any evidence at all." A reporting employee's report alone is sufficient evidence to support a prison disciplinary finding. *Hudson v. Johnson*, 242 F.3d 534, 536-37 (5th Cir. 2001).

In sum, the disciplinary process and the DHO's reports and findings provided to Cedano the requisite measure of process guaranteed to him under *Wolff* and *Hill*, and none of his specific grounds for relief have any merit to undermine that determination.

## V. CONCLUSION

It is therefore **ORDERED** that the Bureau of Prisons is **DISMISSED** as a party respondent, and the petition for writ of habeas corpus under 28 U.S.C. § 2241 is **DENIED**.

Signed March 31, 2017.

E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE